1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11   JANE DOE,                          ) Case No.: 1:16-cv-01469 - JLT
                                        )
12                Plaintiff,            ) ORDER DENYING IN PART AND GRANTING
                                        ) IN PART PLAINTIFF'S MOTION TO AMEND
13         v.                           ) THE CASE SCHEDULE AND TO ALLOW THE
                                        ) FILING OF A FIRST AMENDED COMPLAINT
14   COUNTY OF KERN, et al.,            )
                                        ) (Doc. 29)
15                Defendants.           )
                                        )
16   _____)

17         Jane Doe alleges the defendants are liable for civil rights violations arising under 42 U.S.C. §

18   1983, related to incidents while she was incarcerated in a juvenile detention facility.  (*See generally*

19   Doc. 1)  She now seeks to amend her complaint to identify Anderson's supervisor, Heathe Appleton, as

20   a defendant.  (Doc. 19)  The County of Kern oppose the motion, asserting leave to amend is futile and

21   could prejudice Mr. Appleton.  (Doc. 20)

22         Because the Court finds the amended complaint states at least one non-futile claim and leave to

23   amend is appropriate under Rules 15 and 16 of the Federal Rules of Civil Procedure, Plaintiff's motion

24   to amend is **DENIED in PART** and **GRANTED in PART**.

25   **I.     Background**

26         Plaintiff alleges that that while she "was incarcerated at the James G. Bowles juvenile detention

27   facility, she was a victim of grooming, exploitation, voyeurism and sexual abuse by Defendant

28   Anderson."  (Doc. 1 at 2, ¶ 2)  According to Plaintiff, "Defendant Anderson viewed Plaintiff while she

                                        1

showered and peeped into her cell while she was using the toilet on multiple occasions." (*Id.*) In addition, Plaintiff asserts that "Defendant Anderson told Plaintiff that he liked watching her shower, suggested that she should leave her boyfriend for him, and, after a period of time during which he assumed greater and greater familiarity with her, directly propositioned Plaintiff for sex." (*Id.*) She alleges she "reported [this] misconduct to a close friend, to her parents, and to a counselor, which led to the police being immediately notified." (*Id.* at 2, ¶ 2)

She asserts the allegations of "sexual abuse of Plaintiff and other wards and juvenile hall" against Defendant Anderson were investigated by the Bakersfield Police Department, which "submitted a report to the Kern County District Attorney's Office to request that … Anderson be charged with three counts of P.C. 289(a)(1)(A) (sexual penetration), three counts of P.C. 149 (assault under color of authority), two counts of P.C. 647(j)(1) (invasion of privacy), and one count of P.C. 647.6(a)(1) (annoying or molesting a child)." (Doc. 1 at 2-3, ¶ 3)

Plaintiff contends "Defendants Does 1-10," collectively identified as "Additional Defendants," "were employees of the County of Kern" who acted "under color of law within the course and scope of their duties with respect to their employer." (Doc. 1 at 4, ¶ 9) She asserts the Additional Defendants "failed to intervene to prevent … [Anderson's] misconduct, even though they had an opportunity to do so." (*Id.* at 9, ¶35) In addition, Plaintiff alleges that the Additional Defendants "were deliberately indifferent to the risk or danger of sexual abuse of [Plaintiff] and similarly situated wards." (*Id.*) She contends that as of the filing of the complaint, neither Anderson nor the Additional Defendants "have been disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the incident." (*Id.* at 12, ¶ 67)

Based upon the foregoing facts, Plaintiff filed a complaint on September 30, 2016, in which she identified the following causes of action: (1) "Civil Rights Action" under 42 U.S.C. § 1983— for violations of the Fourth, Eighth, and Fourteenth Amendments—against Anderson and the Additional Defendants; (2) substantive due process violation against Anderson and the Additional Defendants; (3) unconstitutional custom, practice, or policy in violation of 42 U.S.C. §1983 against the County of Kern; (4) inadequate training/ policy of inaction, against the County; (5) ratification, against the County; and (6) supervisor liability, against the Additional Defendants. (*See generally* Doc. 1 at 8-14)

On April 10, 2017, Plaintiff filed a motion for leave to amend her complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure, seeking "to substitute the name 'Heathe Appleton' for the defendant fictitiously named as "Doe 1." (Doc. 18 at 2) However, the Court determined that Plaintiff made substantive changes to the allegations in her complaint, and was not seeking only to identify one of the "Doe" defendants. (Doc. 24 at 4) Upon reviewing the proposed amended complaint, the Court found that the amendment was futile because she failed "allege *any* facts that support her claim for supervisor liability against Appleton, and [did] no more than offer legal conclusions." (*Id.* at 9) Thus, Plaintiff's motion to amend the complaint was denied without prejudice. (*Id.* at 11)

On May 22, 2017, Plaintiff filed the motion to amend now pending before the Court, again seeking to identify Heathe Appleton as a defendant. (Doc. 29) The County filed its opposition to the motion on June 5, 2017, arguing Plaintiff fails to demonstrate good cause, and that the proposed amendments are futile. (Doc. 31 at 3-5) Further, the County asserts permitting the amendment is potentially prejudicial to Mr. Anderson. (*Id.* at 6) Plaintiff filed her brief in reply on June 12, 2017. (Doc. 34)

## II.    Legal Standards

### A.    Scheduling Orders

Districts courts must enter scheduling orders in actions to "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3). In addition, scheduling orders may "modify the timing of disclosures" and "modify the extent of discovery." *Id.* Once entered by the court, a scheduling order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). Scheduling orders are intended to alleviate case management problems. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). As such, a scheduling order is "the heart of case management." *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3rd Cir. 1986).

Further, scheduling orders are "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson*, 975 F.2d at 610 (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Maine 1985)). Good cause must be shown for modification of the scheduling order. Fed. R. Civ. P. 16(b)(4). The Ninth Circuit explained:

Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although existence of a degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for modification. If that party was not diligent, the inquiry should end.

*Johnson*, 975 F.2d at 609 (internal quotation marks and citations omitted). Therefore, parties must "diligently attempt to adhere to the schedule throughout the course of the litigation." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999). The party requesting modification of a scheduling order has the burden to demonstrate:

(1) that she was diligent in assisting the Court in creating a workable Rule 16 order, (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference, and (3) that she was diligent in seeking amendment of the Rule 16 order, once it become apparent that she could not comply with the order.

*Id.* at 608 (internal citations omitted).

## B.    Pleading Amendments

Under Fed. R. Civ. P. 15(a), a party may amend a pleading once as a matter of course within 21 days of service, or if the pleading is one to which a response is required, 21 days after service of a motion under Rule 12(b), (e), or (f). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Because Defendant does not consent to the filing an amended complaint, Plaintiff seeks the leave of the Court.

Granting or denying leave to amend a complaint is in the discretion of the Court, *Swanson v. United States Forest Service*, 87 F.3d 339, 343 (9th Cir. 1996), though leave should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). Consequently, the policy to grant leave to amend is applied with extreme liberality. *Id.*

There is no abuse of discretion "in denying a motion to amend where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop

4

his contentions originally." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995); *see also Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990). After a defendant files an answer, leave to amend should not be granted where "amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Madeja v. Olympic Packers*, 310 F.3d 628, 636 (9th Cir. 2002) (citing *Yakama Indian Nation v. Washington Dep't of Revenue*, 176 F.3d 1241, 1246 (9th Cir. 1999)).

## III.     Discussion and Analysis

As an initial matter, the Scheduling Order in this action set forth a pleading amendment deadline of April 10, 2017, whether by stipulation or a written motion. (Doc. 13 at 3) The motion now pending before the Court was filed on May 22, 2017. (Doc. 29) Thus, Plaintiff is required to demonstrate good cause under Rule 16 for filing an amended pleading out-of-time. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (explaining the question of whether the liberal amendment standard of Rule 15(a) or the good cause standard of Rule 16(b) apples to a motion for leave to amend a complaint depends on whether a deadline set in a Rule 16(b) scheduling order has expired). Accordingly, the Court examines Plaintiff's diligence to determine whether amendment of the Scheduling Order is proper.

### A.     Plaintiff's Diligence

Plaintiff reports that during the course of discovery, she "learned that Heathe Appleton was Defendant Anderson's supervisor, along with other facts supporting [her] claim for relief." (Doc. 29 at 5) As a result, Plaintiff sought leave to amend the complaint on April 10, 2017, the date of the pleading amendment deadline. (*See id.*; *see also* Doc. 18) However, the motion was denied without prejudice on May 8, 2017, after the Court determined the proposed amendments were futile. (*See* Doc. 24) Plaintiff reports, "The following week, Plaintiff circulated for Defendants' review the additional facts to be used in the proposed amended complaint that is the subject of this motion, to see whether there would be any dispute as to the confidentiality of those facts." (Doc. 29 at 8) According to Plaintiff, "[t]he parties agreed on a set of facts that could be filed without redactions on Friday, May 19, 2017," and this motion was filed on Monday, May 22. (*Id.*) Therefore, Plaintiff contends she has been diligent in seeking leave to amend the complaint.

5

On the other hand, the County contends Plaintiff did not diligently pursue the discovery that yielded the facts alleged in the proposed amended complaint. (Doc. 31 at 3) In addition, the County argues Plaintiff failed to "provide[] a sufficient explanation for the cause of the delay in seeking the amendment to the complaint until after the deadline for amendments has passed." (*Id.*) The County observes that Plaintiff "could have sent out notices of depositions as early as Jan. 11, 2017," and that "[i]f plaintiff believed she needed Mr. Appleton's deposition prior to amending the complaint, [she] could have noticed this deposition well before the date it actually took place, March 21, 2017." (*Id.*) According to the County, Plaintiff should have anticipated that the Court would deny the motion to amend because counsel "sent plaintiff's counsel a lengthy e mail stating the reasons why the proposed amended complaint failed to state facts to support a supervisory liability claim" on April 7, three days prior to the filing of the motion to amend. (*Id.* at 3) Finally, the County asserts that Plaintiff's counsel had reason to know that Heathe Appleton was Defendant Anderson's supervisor based upon information learned during a deposition in August 2016 in a case where the plaintiff is represented by the same attorneys.[1] (*Id.*)

In reply, Plaintiff reports she sought relevant documents following the entry of the Court's scheduling order, and propounded written discovery on March 1, 2017. (Doc. 34 at 3) In addition, she reports that the parties entered into a protective agreement on March 8, under which documents produced in a parallel case were deemed produced in this matter, but this did not include the deposition testimony cited by the County. (*Id.* at 3-4) Further, Plaintiff reports the deposition of Mr. Appleton's was taken on March 21; the deposition of Defendant Anderson was on March 22; and the deposition of Victoria Suender was on April 4, 2017. (*Id.* at 4) Plaintiff contends the information gleaned in these depositions provided "the factual basis on which to pursue a supervisory liability claim against Heathe Appleton," after which she filed the motion to amend on April 10. (*Id.*)

Significantly, based upon the information provided by the parties, it appears Plaintiff has been diligent in pursuing discovery in this action. She quickly sought leave to amend the complaint based upon the information obtained from Ms. Suender by filing a motion less than a week after the

---

[1] Due to the confidential nature of the testimony, the Court declines to state the specifics of how and what information was obtained.

deposition. Likewise, it was less than a week after the Court denied the motion to amend given the lack of factual allegations that Plaintiff distributed a draft of proposed amended complaint— including facts learned from Ms. Suender's deposition to support her claim— in an attempt to resolve any dispute regarding confidentiality of facts. The promptness of both the filing of the original motion to amend and Plaintiff's attempt to cure the deficiencies identified by the Court demonstrates that Plaintiff has acted with diligence in seeking leave to file an amended complaint. Accordingly, the Court finds the good cause requirement of Rule 16 is satisfied.

### B.    Leave to Amend under Rule 15

Because the Court concludes Plaintiff demonstrated diligence, the Court must also determine whether amendment of the pleading is proper under Rule 15. Evaluating a motion to amend, the Court may consider (1) whether the party has previously amended the pleading, (2) undue delay, (3) bad faith, (4) futility of amendment, and (5) prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Loehr v. Ventura County Comm. College Dist*., 743 F.2d 1310, 1319 (9th Cir. 1984). These factors are not of equal weight, because prejudice to the opposing party has long been held to be the most critical factor to determine whether to grant leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990).

#### 1.    Prior amendments

The Court's discretion to deny an amendment is "particularly broad" where a party has previously amended the pleading. *Allen*, 911 F.2d at 373. Here, though Plaintiff previously sought leave to amend the complaint, the request was denied and there have not been any amendments. Accordingly, this factor does not weigh against granting leave to amend.

#### 2.    Undue delay

By itself, undue delay is insufficient to prevent the Court from granting leave to amend pleadings. *Howey v. United States*, 481 F.2d 1187, 1191(9th Cir. 1973); *DCD Programs v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1986). However, in combination with other factors, delay may be sufficient to deny amendment. *See Hurn v. Ret. Fund Trust of Plumbing*, 648 F.2d 1252, 1254 (9th Cir. 1981). Evaluating undue delay, the Court considers "whether the moving party knew or should

have known the facts and theories raised by the amendment in the original pleading." *Jackson*, 902 F.2d at 1387; *see also Eminence Capital*, 316 F.3d at 1052. Also, the Court should examine whether "permitting an amendment would . . . produce an undue delay in the litigation." *Id*. at 1387.

There were known facts supporting a claim for supervisor liability at the time Plaintiff filed her complaint. However, due to the delay in the parties agreeing that discovery efforts in related cases could be used in this case, Plaintiff's counsel reasonably sought to "discover" these facts in this case. Thus, the Court does not find that Plaintiff delayed in seeking leave to amend once Heathe Appleton was identified as Anderson's supervisor and she obtained evidence in this case that would support a claim against Appleton. In addition, it does not appear that amendment would produce an undue delay in the litigation, because discovery will remain open for several months. Accordingly, this factor does not weigh against amendment.

### 3. Bad faith

There is no evidence before the Court suggesting Plaintiff acted in bad faith in seeking the proposed amendment. Therefore, this factor does not weigh against granting leave to amend.

### 4. Futility of amendment

Futility may be found where the proposed claims duplicate existing claims or patently frivolous, or both. *See Bonin*, 59 F.3d at 846. In addition, an amendment is futile when "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton*, 845 F.2d 209, 214 (9th Cir. 1988). Further, a court may find a claim is futile if it finds "inevitability of a claim's defeat on summary judgment." *California v. Neville Chem. Co.*, 358 F.3d 661, 673 (9th Cir. 2004) (quoting *Johnson v. Am. Airlines, Inc.*, 834 F.2d 721, 724 (9th Cir. 1987)). A proposed amendment is futile, if it cannot withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011) (citing *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)) (*reh'g en banc Nordyke v. King*, 681 F.3d 1041 (9th Cir. 2012). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin,* 59 F.3d at 845; *see also Miller*, 845 F.2d at 214.

Plaintiff's proposed amended complaint identifies Heathe Appleton as a defendant for her claims of violations of civil rights (failure to intervene), violation of substantive due process

(deliberate indifference to Plaintiff's constitutional rights), and supervisor liability. (*See* Doc. 29-1 at 17) Defendant contends the facts alleged fail to support these claims for relief, and as a result the proposed amendment is futile. (Doc. 31 at 4-5)

### a. Plaintiff's allegations

In the proposed First Amended Complaint, Plaintiff contends Heathe Appleton was an employee of the County, who "acted in a supervisory capacity and under color of state law." (Doc. 29-1 at 4, ¶ 9; *id.* at 17, ¶ 89) Plaintiff alleges Appleton was the "direct supervisor" of Defendant Anderson and "was responsible for ensuring that the actions of his subordinates complied with written policies, including policies designed to prevent and deter sexual abuse." (*Id.* at 8, ¶¶ 31-32)

She asserts: "Juvenile Hall written policies provided for 'zero tolerance' of sexual abuse of wards by staff," which was "defined to include, without limitation, sexual voyeurism by staff" under the Prison Rape Elimination Act ("PREA"). (Doc. 29-1 at 8, ¶ 33) In addition, Plaintiff alleges "basic rules" at Juvenile Hall "prohibited staff members from being alone with wards of the opposite gender outside of emergencies." (*Id.*, ¶ 34) Plaintiff alleges written policies "required staff members to report sexual abuse, the suspicion of sexual abuse, or any deviation from written policy in writing." (*Id.*) Further, she asserts that under the PREA, "the presumptive discipline for any form of sexual abuse by staff is termination." (*Id.* at ¶ 33)

Plaintiff asserts that Heathe Anderson knew Anderson violated the written policies and rules of Juvenile Hall, stating:

> Despite written policies that strictly prohibited staff members from being alone in a rooms with a minor of the opposite gender outside of an emergency, HEATHE APPLETON observed GEORGE ANDERSON in a room alone with a female ward on three to four occasions (none of which were emergencies) and failed to document or report it. HEATHE APPLETON failed to intervene to enforce policy, protect wards, or discipline GEORGE ANDERSON in connection with these observations. On at least one occasion, HEATHE APPLETON observed GEORGE ANDERSON alone with Plaintiff, in clear violation of written policy, before Plaintiff complained of the sexual abuse that is the subject of this case. HEATHE APPLETON took no action in connection with these observations, even though what he had observed was a clear violation of written policy.

(Doc. 29-1 at 8-9, ¶ 35)

In addition, Plaintiff asserts that Virginia Suender, who "was employed as an extra help juvenile corrections officer" under the direct supervision of Anderson, reported misconduct by Anderson to

Heathe Appleton. (Doc. 29-1 at 10, ¶ 42) According to Plaintiff, in July 2014, Ms. Suender saw Anderson "tell a female ward to get ready to shower," although he "was the only staff member in [the] unit at the time." (*Id.* at 9, ¶ 39) Plaintiff asserts that Anderson "directed three female wards… to shower in the shower stalls," and Anderson "he had the ability to see into the showers from where he was sitting." (*Id.*, ¶ 41) Ms. Suender believed Anderson "was violating Juvenile Hall policies and procedures," and "reported this misconduct immediately" to Appleton by calling over the phone." (*Id.* at 10, ¶¶ 42- 43) Plaintiff asserts Appleton told Ms. Suender that "he would 'look into it,'" and then returned a call saying Anderson's "actions were within Kern County Probation Department policy." (*Id.*, ¶ 43) Plaintiff also alleges Appleton "discouraged Ms. Suender from writing a report." (*Id.*)

According to Plaintiff, Appleton "never documented or reported in writing that [Anderson] had been supervising showers of female wards alone." (Doc. 29-1 at 10, ¶ 44) In addition, she asserts Appleton "never documented in writing the fact that he observed [Anderson] alone a room with a female ward, nor did he re-train or reprimand [Anderson] for being in a room alone with a female ward." (*Id.*) Therefore, Plaintiff contends Appleton failed to address Anderson's misconduct "in a 'zero tolerance' manner." (*Id.*, ¶ 45) Instead, Plaintiff alleges, "Written policies that were designed to prevent and deter sexual abuse were not enforced, and violations of policy were covered up and ignored." (*Id.*) She asserts that because "the written policies in question were designed, at least in part, to prevent and deter sexual abuse, [Appleton] knew or reasonably should have known that his failure to enforce these policies heightened the danger of sexual abuse of wards." (*Id.* at 11, ¶ 47) Further, Plaintiff asserts that if Anderson was "adequately trained and supervised prior to the sexual abuse of [Plaintiff], if his errant behavior had been investigated, and if he had been punished as a result, then the sexual abuse of [Plaintiff] in this case could have been averted." (*Id.*, ¶ 49)

### b. *Legal Standards Governing Section 1983 Claims*

A plaintiff seeking to state a claim for a violation of his or her constitutional rights may state a claim pursuant to 42 U.S.C. § 1983 ("Section 1983"), which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C. § 1983. To plead a Section 1983 violation, a plaintiff must allege facts from which it may be inferred that (1) a constitutional right was deprived, and (2) a person who committed the alleged violation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

A plaintiff must allege a specific injury she suffered and show causal relationship between the defendant's conduct and the injury suffered. *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976). Thus, Section 1983 "requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff." *Chavira v. Ruth*, 2012 WL 1328636 at *2 (E.D. Cal. April 17, 2012). An individual deprives another of a constitutional right "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). In other words, "[s]ome culpable action or in action must be attributable to defendants." *See Puckett v. Corcoran Prison - CDCR*, 2012 WL 1292573, at *2 (E.D. Cal. Apr. 13, 2012).

### c.    *Failure to intervene*

A plaintiff may state a claim for the failure to intervene where bystander officers have an opportunity to intervene, but fail to do so. *Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003); *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) ("police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen"). Importantly, "officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Cunningham*, 299 F3d at 1289-90 (citing *Bruner v. Dunaway*, 684 F.2d 422, 426-27 (6th Cir. 1982) [holding that officers who were not present at the time of the alleged assault could not be held liable in a Section 1983 action]; *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 n.3 (1st Cir. 1990) [granting the officers' motion for summary judgment because the officers had no "realistic opportunity" to prevent the attack committed]).

Plaintiff fails to allege facts sufficient to support a determination that Appleton had an opportunity to prevent the actions taken by Anderson that violated her constitutional rights. Although she alleges that Appleton witnessed Anderson in a room with wards, she does not allege that Appleton

saw *her* in a room with Anderson and failed to act.  Consequently, the facts alleged in the proposed first amended complaint are insufficient to support this claim for relief, and it may be subject to a motion to dismiss.

**d.**     *Substantive due process- deliberate indifference*

Plaintiff contends Defendants, including Appleton, are liable for a violation of her right to substantive due process "in that they acted with deliberate indifference to [her] constitutional rights." (Doc. 29-1 at 13, ¶60)

Though prisoners may be subject to punishment while incarcerated, the substantive Due Process Clause protects them from "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). However, liability may not be established unless there is a showing the official acted with deliberate indifference to the rights of the inmate.

As the Ninth Circuit explained, "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). In clarifying the culpability required for "deliberate indifference," the Supreme Court held that an officer "cannot be found liable … for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exits, and he must also draw that inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a defendant must be "subjectively aware that serious harm is likely to result …." *Gibson v. County of Washoe*, 290 F.3d 1175, 1193 (9th Cir. 2002) (emphasis omitted).  If a defendant should have been aware of the risk of substantial harm but was not, "then the person has not violated the Eighth Amendment, no matter how severe the risk." *Id.* at 1188.

Plaintiff has not alleged any facts supporting the conclusion that Appleton was aware of the alleged sexual abuse by Anderson.  Though she alleges the policies were intended to prevent sexual abuse of minors, there are no allegations that the "at least one time" that Appleton saw Anderson alone with the plaintiff in a room, that there was anything untoward happening or that Appleton understood the situation to constitute more than an employee and a ward completing a work detail.  Though the plaintiff alleges that on other occasions, Appleton had reason to know that Anderson's conduct with

other wards constituted sexual misconduct, there is no showing he had reason to know that Anderson's conduct with the plaintiff did so. Without such knowledge, as Defendants argue, Plaintiff fails to establish that Appleton knew of and disregarded the risk to her safety. As a result, her claim for deliberate indifference against Appleton is not cognizable.

### e.    Individual liability

The Supreme Court determined that when stating a claim under Section 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "Thus, there must be facial plausibility in a plaintiff's allegations that some action/inaction on the part of a supervisor caused her alleged constitutional injury." *Alston v. County of Sacramento*, 2012 U.S. Dist. LEXIS 95494, 2012 WL 2839825, at *4 (E.D. Cal. 2012).

"[A] supervisory official can be found liable in his individual capacity if there is a sufficient nexus between his own conduct and the constitutional violations committed by subordinates." *Johnson v. City of Vallejo*, 99 F. Supp. 3d 1212, 1219 (E.D. Cal. 2015). As the Ninth Circuit explained:

> "Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." *Preschooler II v. Clark County Sch. Bd. of Trustees*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005)). In a section 1983 claim, "a supervisor is liable for the acts of his subordinates 'if the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them.'" *Preschooler II*, 479 F.3d at 1182 (quoting *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Id.* at 1183 (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978))

*Id.* (quoting *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009)). Thus, a defendant cannot be held liability for being generally deficient in a supervisor role, and a plaintiff must plead sufficient facts showing that the supervisor' actions caused a violation of the plaintiff's rights. *Iqbal*, 556 U.S. at 676.

Plaintiff alleges that Appleton personally witnessed misconduct by Anderson and also received a report of misconduct by a subordinate employee, yet failed to enforce Juvenile Hall policies and the PREA which imposed a "zero tolerance" standard for sexual abuse. The facts alleged are sufficient "to plausibly establish" his knowledge of and acquiescence of the conduct of Anderson. *See Hydrick*

*v. Hunter,* 669 F.3d 937, 942 (2012). Further, the facts alleged support a conclusion that Appleton was deliberately indifferent to Plaintiff's constitutional rights.

### f. Conclusion

Because Plaintiff has stated a cognizable claim for supervisor liability against Appleton in the proposed first amended complaint, the Court finds the amendment is not futile, and this factor does not weigh against granting leave to amend.

### 5. Prejudice to the opposing party

The most critical factor in determining whether to grant leave to amend is prejudice to the opposing party. *Eminence Capital*, 316 F.3d at 1052. The burden of showing prejudice is on the party opposing an amendment to the complaint. *DCD Programs*, 833 F.2d at 187; *Beeck v. Aquaslide 'N' Dive Corp.*, 562 F.2d 537, 540 (9th Cir. 1977). Prejudice must be substantial to justify denial of leave to amend. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). There is a presumption in favor of granting leave to amend where prejudice is not shown under Rule 15(a). *Eminence Capital*, 316 F.3d at 1052.

The County argues that "amending the complaint is potentially prejudicial" to Heathe Appleton. (Doc. 31 at 6) The County asserts that Appleton "will have missed out on his opportunity to depose key individuals to the alleged claims against him," because several individuals have been deposed and he will "not have the opportunity to depose these individuals, without seeking leave of court." (*Id.*) However, to the extent that Appleton would be prejudiced, it appears the prejudice may be cured by the Court. Accordingly, the Court finds this factor does not weigh against granting Plaintiff leave to file the proposed amended complaint.

## IV. Conclusion and Order

Based upon the foregoing, the Court finds Plaintiff has satisfied the diligence requirements of Rule 16. In addition, the factors set forth by the Ninth Circuit weigh in favor of allowing Plaintiff to file the Amended Complaint. *See Madeja*, 310 F.3d at 636. Therefore, the Court is acting within its discretion in granting the motion to amend. *See Swanson*, 87 F.3d at 343.

Accordingly, the Court **ORDERS**:

1. Plaintiffs' motion to amend (Doc. 29) is **DENIED** as to the amended First and Second

Causes of Action and **GRANTED** as to the remainder of the amended complaint; and

     2.     Plaintiffs **SHALL** file her amended complaint within three days of the date of service of this order.

IT IS SO ORDERED.

Dated:    **June 22, 2017**               **/s/ Jennifer L. Thurston**
                                       UNITED STATES MAGISTRATE JUDGE