**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAMANTHA VAZQUEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF KERN, et al.,<br><br>    Defendants. | Case No.: 1:16-cv-1469 - JLT<br><br>ORDER GRANTING DEFENDANT HEATHE APPLETON'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 57) |

Plaintiff alleges the defendants are liable for civil rights violations arising under 42 U.S.C. § 1983, related to incidents while she was incarcerated in a juvenile detention facility. (*See generally* Doc. 37) Defendant Heathe Appleton argues Plaintiff is unable to succeed on the claim against him, and seeks summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. 57)

The Court heard the oral arguments of the parties on December 7, 2017. For the following reasons, Defendant's motion for summary judgment is **GRANTED**.

**I.    Background**[1]

Plaintiff was incarcerated at the James G. Bowels juvenile detention center, and alleges that while there "she was a victim of grooming, exploitation, voyeurism and sexual abuse by Defendant

---

[1] This background is a summary of both the undisputed facts and the parties' positions in this action. Facts from the parties' Joint Statement of Undisputed Material Facts are identified as "JSF." (Doc. 57-3) In addition, each of the parties prepared additional facts in support of the motion. To the extent any facts identified by the parties are undisputed and the Court found the evidence cited supports the fact identified, these are identified as "DSF" for Defendant's Separate Facts and "PSF" for Plaintiff's Separate Facts.

1

Anderson." (Doc. 37 at 2, ¶ 2)  She alleges she "reported [this] misconduct to a close friend, to her parents, and to a counselor, which led to the police being immediately notified." (*Id.*)

She asserts the allegations of "sexual abuse of Plaintiff and other wards at juvenile hall" against Defendant Anderson were investigated by the Bakersfield Police Department, which "submitted a report to the Kern County District Attorney's Office to request that … Anderson be charged with three counts of P.C. 289(a)(1)(A) (sexual penetration), three counts of P.C. 149 (assault under color of authority), two counts of P.C. 647(j)(1) (invasion of privacy), and one count of P.C. 647.6(a)(1) (annoying or molesting a child)." (Doc. 37 at 2-3, ¶ 3)

"Appleton was Anderson's direct supervisor," "and as such Appleton was the person responsible for making sure that Anderson's conduct was complying with policies and procedures of the institution." (PSF 50, 111)  For example, "[t]he written policies of the Kern County James G. Bowles Juvenile Hall ("KC Juvenile Hall") prohibited staff from supervising showers of wards of the opposite sex." (JSF 1)  In addition, KC Juvenile Hall policy 1425N provides: "Staff members are not permitted alone in the rooms with minors of the opposite gender except during an emergency.  For security purposes, staff should avoid being alone with any minor in their room." (JSF 3)  Further, policy 1455 provides: "Any member of staff working with youth in their room should make certain the other member of the staff is not so engaged. This permits one person to be available should an emergency arise." (JSF 2)

"Appleton was trained that the county has a zero tolerance policy for sexual abuse, that if he observed sexual abuse, he had a duty to report and document it; that if he observed any red flags, he had a duty to report and document it; and that if he received a report of suspicions of sexual abuse from other staff, he was to instruct that staff member to document it." (PSF 245)  Inappropriate behavior could include "a male staff member [being] alone in a room with female ward for an extended period of time, outside of an emergency" and sitting "at the staff counter while wards showered in Unit 300A, if he had a line of site into the shower." (PSF 238, 240)  In addition, "red flags" included "using the same ward over and over again for detail" without a specific reason, "name calling, nicknames, staff giving a ward a hug, staff always wanting to talk to a specific ward, or a ward always requesting to speak with specific staff [member]." (PSF 241, 242)

On July 29, 2014, Virginia Suender "overheard Anderson tell a female ward to get ready to shower while Suender was in Unit 300B; Anderson was the only staff member in the unit and the female staff and other minors were out to PE at the time." (PSF 91) "Suender witnessed the female ward come out of her room and place her items of clothing in the separate containers for soiled laundry." (PSF 92) "She also observed two other detail [wards] in their shower gowns at that time." (PSF 97) She "wrote down what she observed" and "told Appleton over the phone that she observed Anderson shower three female minors earlier in the day and that she did not feel it was appropriate." (PSF 94, 109) "Appleton told Suender he would look into it and then called her back …and told her that he looked into it[,] and Anderson's conduct was within policy."[2] (PSF 110) In addition, "Appleton told Suender that that if what she observed bothered her so much then she could write a report," though she "interpreted this comment from Appleton to be sarcastic." (PSF 112) "Appleton asked his supervisor, Matt Fontaine about this incident, in order to get guidance and clarity. [Appleton] then spoke to Anderson and told him he needed to have a female present during showers."[3] (DSF 8; Appleton Depo. 19:22-21:9, 94:8-23; Anderson Depo. 21:9-17)

Juvenile Hall staff member Leesa Howard reported to Appleton that she observed Anderson alone with a ward for four hours on either January 11 or 18, 2015.[4] (*See* PSF 146; Howard Depo. 9:15-25) She reported this to Appleton, who told Ms. Howard to complete a special incident report. (*Id.*; *see also id.* at 23:15- 24:16) Ms. Howard testified that Anderson and the ward were doing a painting detail, with the door to the room "completely wide open," in a manner such that she could "hear them talking the entire time." (*Id.* at 10:1-5, 12:5-7, 27:1-3). Ms. Howard testified that she checked the rooms every eight to ten minutes, and each time Anderson and the ward were "on opposite sides of the room so they're not even close to each other." (*Id.* at 23:4-5, 27:1-6) She did not believe there was a violation of policy, and wrote the report to indicate she did not see anything inappropriate occurring in the room,

---

[2] Defendant objects to the admissibility of this statement as hearsay. (Doc. 90 at 27) Because the statements identified were made by defendant Appleton, and are offered against him, they are not hearsay. Fed. R. Evid. 801(d)(2)(A).
[3] Plaintiff contends this fact is "disputed." However, the evidence identified by Plaintiff does not conflict with the evidence identified by Defendants in support of the fact. Furthermore, it is consistent with the testimony of Anderson, who testified Appleton approached him later and said not to tell wards to shower when he was the only officer in the unit. (Anderson Depo. 21:9-17)
[4] Although Ms. Howard testified that she saw Anderson with Plaintiff, it is undisputed that Plaintiff was not arrested until January 19, 2015, at which time Plaintiff began detox for three days before being assigned to work details. (*See* Doc. 37 at 5, ¶ 20; Vazquez Depo. 62:10-63:9) Thus, Ms. Howard is mistaken either as to the date or the identity of the ward she saw with Anderson.

after hearing of allegations against Anderson. (*Id.* at 23:15-24:2, 26:4-5)

On more than one occasion, "Appleton observed George Anderson in a room with a female ward." (JSF 8) Appleton testified that one time, he also observed Anderson in a room alone with Plaintiff. (Appleton Depo. 89:7-21) "Appleton did not report … Anderson after seeing him in a room with a female ward." (DSF 3) Appleton testified that when he saw Anderson alone in the room with female wards, "[he] didn't see any harm that was to the staff or the youth in that room." (Appleton Depo. 48:21-25) In addition, "Appleton did not believe there was a policy banning an officer from being alone in the same room with a ward." (PSF 129) Appleton later told Bakersfield Police Detectives that "Anderson could have been doing a painting detail alone with a female ward for hours." (PSF 128)

**II.     Legal Standards for Summary Judgment**

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsuhita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim. Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . .") (internal quotation marks and citation omitted). The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Summary judgment, or summary adjudication, should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find

for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987). A party demonstrates summary adjudication is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue of a material fact. Fed R. Civ. P. 56(e); *Matsuhita*, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 587. The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its assertion that a factual dispute exists. *Id.* at 586 n.11; Fed. R. Civ. P. 56(c). Further, the opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The Court must apply standards consistent with Rule 56 to determine whether the moving party demonstrates there is no genuine issue of material fact and judgment is appropriate as a matter of law. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). In resolving a motion for summary judgment, the Court can only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). Further, Court must view the evidence "in the light most favorable to the nonmoving party," and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr*, 285 F.3d at 772; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

### III. Discussion

Appleton seeks summary adjudication of Plaintiff's Sixth Claim for Relief for Supervisory

Liability under 42 U.S.C. § 1983. (Doc. 57) Appleton asserts that "he has not violated the constitutional rights of the Plaintiff as a matter of law." (Doc. 57-1 at 5) Plaintiff opposes summary judgment, arguing she "has stated facts to support a claim of supervisory liability against Appleton." (Doc. 79 at 24; Doc. 94 at 24 [emphasis omitted])

### A. Section 1983 Standards

Plaintiff contends Anderson is liable for violations of 42 U.S.C. § 1983 (Doc. 37 at 12-13), which "is a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). In relevant part, Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C. § 1983. To establish a Section 1983 violation, a plaintiff must show (1) deprivation of a constitutional right and (2) a person who committed the alleged violation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

A plaintiff must allege a specific injury was suffered, and show causal relationship between the defendant's conduct and the injury suffered. *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976). A person deprives another of a right "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). In other words, "[s]ome culpable action or in action must be attributable to defendants." *See Puckett v. Corcoran Prison - CDCR*, 2012 WL 1292573, at *2 (E.D. Cal. Apr. 13, 2012). Here, Plaintiff asserts Appleton is liable for "Supervisory Liability" under 42 U.S.C. § 1983. (Doc. 37 at 17)

### B. Individual Liability of Appleton

The Supreme Court determined that when stating a claim under Section 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "Thus, there must be facial plausibility in a plaintiff's allegations that some action/inaction on the part of a supervisor caused her alleged constitutional injury." *Alston v. County of Sacramento*, 2012 U.S. Dist. LEXIS 95494, 2012

WL 2839825, at *4 (E.D. Cal. 2012).

"[A] supervisory official can be found liable in his individual capacity if there is a sufficient nexus between his own conduct and the constitutional violations committed by subordinates." *Johnson v. City of Vallejo*, 99 F. Supp. 3d 1212, 1219 (E.D. Cal. 2015). As the Ninth Circuit explained:

> "Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." *Preschooler II v. Clark County Sch. Bd. of Trustees*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005)). In a section 1983 claim, "a supervisor is liable for the acts of his subordinates 'if the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them.'" *Preschooler II*, 479 F.3d at 1182 (quoting *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Id.* at 1183 (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978))

*Id.* (quoting *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009)). Thus, a defendant cannot be held liability for being generally deficient in a supervisor role, and a plaintiff must establish that the supervisor' actions caused a violation of the plaintiff's rights. *See Iqbal*, 556 U.S. at 676. "[W]hen a supervisor is found liable based on deliberate indifference, the supervisor is being held liable for his or her own culpable action or inaction, not held vicariously liable for the culpable action or inaction of his or her subordinates." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

A defendant may be held liable as a supervisor under Section 1983 if there exists "either (1) his or her personal involvement in the constitutional deprivation; or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Starr*, 652 F.3d at 1207. The causal connection between a supervisor's wrongful conduct and the violation of an inmate's constitutional rights can be established in a number of ways. For example, a plaintiff may show that the supervisor "knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known would cause others to inflict a constitutional injury." *Dubner v. City & County of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001); *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991). In addition, a supervisor may be held liable for his action or inaction in the "training, supervision, or control of his subordinates." *Id.* (citing *Larez*, 946 F.2d at 646); *Starr*, 652 F.3d at 1208.

### 1. The Parties' Arguments

Appleton asserts that in the First Amended Complaint, "Plaintiff does not allege that Heathe Appleton was present when Anderson was allegedly viewing the Plaintiff while she showered, nor does she allege that Appleton was aware that Anderson was allegedly viewing the Plaintiff while she showered." (Doc. 57-1 at 10) He contends the pleadings are "devoid of any allegations that Appleton was in any way aware of this alleged violation of policy by Anderson," and there is no evidence "supporting the conclusion that Appleton was aware of this alleged sexual abuse by Anderson." (*Id.*) Further, Appleton asserts Plaintiff "fails to allege any facts showing that Appleton knew of, or should have known, Anderson was allegedly viewing the Plaintiff while she showered," and "[t]here are no facts to establish that the alleged inaction on the part of Appleton caused her alleged constitutional injury." (*Id.*)

Appleton also argues Plaintiff fails to "show that Appleton knew of and disregarded a risk to Plaintiff's safety when he witnessed Anderson and Plaintiff taking part in routine maintenance in an empty room." (Doc. 57-1 at 14) He argues that Policy 1455 related to security "on its face, permitted staff to be in a room of a ward under certain conditions" providing: "Any member of staff working with youth in their room should make certain the other member of the staff is not so engaged. This permits one person to be available should an emergency arise." (*Id.* at 13) Appleton contends there is no evidence "that the 'at least one time' that [he] saw Anderson alone with the Plaintiff in a room, that there was anything untoward happening or that Appleton understood the situation to constitute more than an employee and a ward completing a work detail." (*Id.*) Appleton concludes, "There are simply no facts supporting the conclusion that Appleton was aware, or should have been aware, and disregarded, a risk of sexual abuse of the Plaintiff by Anderson during the one occasion while they worked in a room alone." (*Id.*)

On the other hand, Plaintiff contends she "stated facts to support a claim of supervisory liability against Appleton." (Doc. 79 at 24; Doc. 94 at 24) According to Plaintiff: "Appleton was deliberately indifferent to the fact that Anderson was supervising female wards in the shower while alone in the 300A unit. Moreover, Appleton observed Anderson alone in a room with a female ward (including Plaintiff on one occasion) on three to four occasions, but failed to take any action against Anderson

despite this being a clear violation of Juvenile Hall policies and procedures." (*Id.*) Plaintiff argues that "[b]ecause of Appleton's deliberate indifference to the above transgressions, Plaintiff contends (without limitation) that Anderson propositioned her for sex while in a room alone with her, and that he watched her on more than one occasion while she was nude and showering in Unit 300A." (*Id.*)

Further, Plaintiff asserts that "[d]espite being trained that there was a zero-tolerance policy toward sexual abuse at Juvenile Hall, and despite being trained that he was to document red flags or the suspicion of sexual abuse, Appleton failed to do so." (Doc. 79 at 26; Doc. 94 at 26) According to Plaintiff, "Appleton acknowledged receiving the complaint from Suender, but failed to document it in a report or write Anderson up for what happened." (*Id.*) Plaintiff contends, "Appleton's conduct in light of receiving the complaint from Suender amounts to his 'knowledge of and acquiescence in unconstitutional conduct by [Anderson].'" (*Id.*, quoting *Starr*, 652 F.3d at 1207)

### 2. Analysis of the Evidence

Significantly, there is little evidence before the Court suggesting—let alone, demonstrating — Appleton had knowledge of Anderson's alleged misconduct. Although Appleton was trained he had "a duty to report and document" sexual abuse or "red flags," there is little evidence supporting the conclusion that he had knowledge of such behavior.

For example, it is undisputed that inappropriate behavior could include "a male staff member [being] alone in a room with female ward for an extended period of time, outside of an emergency" (PSF 238) However, Policy No. 1455 provided that staff could work with youth in their rooms, provided that the staff member made "certain the other member of the staff is not so engaged. This permits one person to be available should an emergency arise." (JSF 2) Although Ms. Howard wrote a report, after being requested to do so by Appleton, that indicated she saw Anderson in a room alone with a ward doing details for four hours, Ms. Howard also stated she was checking the rooms every eight to ten minutes, the door to the room was "completely wide open," and she could "hear them talking the entire time." (Howard Depo. 10:1-5, 12:5-7, 27:1-3). She also testified that Anderson remained on the opposite side of the room from the ward, and she did not believe anything inappropriate was happening when she saw them doing details in the room. (*Id.* at 23:15-24:2, 26:4-5) As noted above, it is unclear whether this ward was Plaintiff. Regardless, even if Appleton knew

Anderson was in a room for an extended period of time with a ward while performing work details, there was nothing in the report to indicate anything untoward – let alone, unconstitutional – was occurring. Further, there is no evidence that when Appleton observed Anderson in a room alone with a ward, including Plaintiff, that they had been alone "for an extended period of time" in violation of policy.

While it is undisputed that "red flags included 'using the same ward over and over again for detail" without a specific reason, "name calling, nicknames, staff giving a ward a hug, staff always wanting to talk to a specific ward, or a ward always requesting to speak with specific staff [member]" (PSF 241, 242), there is no evidence supporting the conclusion that Appleton had knowledge of such red flags occurring with Anderson. Plaintiff does not assert the name calling incidents or the use of nicknames were reported to Appleton and identifies no evidence of physical contact, such as a hug, being observed by, or reported, to Appleton.[5] There is also no evidence that Anderson "always wanted to talk" to Plaintiff, or that Plaintiff's request to speak to Anderson when she arrived at Juvenile Hall was reported to Appleton.

Likewise, there is no evidence to support a conclusion that Appleton knew Anderson was viewing wards, including Plaintiff, while taking showers. It is undisputed that it was inappropriate for a male staff member to be sitting "at the staff counter while wards showered in Unit 300A, *if he had a line of site into the shower*." (PSF 240) (emphasis added) However, there is no evidence that Appleton knew if Anderson sat at the staff counter or had line of sight into the showers. The evidence before the Court is that Anderson directed other wards to shower, as Ms. Suender saw wards in their shower gowns, but did not see Anderson take them to the shower area or sit behind the counter where Anderson had a view into the showers. There is no evidence that Appleton even knew where an officer would have to sit at the staff counter to have "a line of site into the shower," or that he was aware of Anderson sitting in this position. Nevertheless, when Appleton was told Anderson had directed wards to shower while he was the only officer in the unit—approximately seven months before Plaintiff was incarcerated at juvenile hall—Appleton instructed Anderson not to do this again. (DSF 8)

Although the evidence suggests that Appleton had reason to know that Anderson's directing

---

[5] Indeed, Plaintiff alleged Anderson only called her "babe "[w]hen they were alone together." (Doc. 37 at 6, ¶ 23)

10

other wards to shower constituted misconduct under the policies in place, there is no showing Appleton had reason to know this misconduct reported by Ms. Suender in July 2014 was more than an isolated incident, which occurred well before Plaintiff was incarcerated on January 19, 2015. Consequently, there is no evidence that Appleton knowingly disregarded the risk to *Plaintiff*'s constitutional rights.

Plaintiff also alleges Appleton "failed to act to prevent [Anderson] from engaging in such conduct" in violation of Plaintiff's rights. (Doc. 37 at 17). A plaintiff may establish liability for the failure to intervene where officers have an opportunity to intervene, but fail to do so. *Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003); *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) ("police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen"). Importantly, "officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Cunningham*, 299 F3d at 1289-90 (citing *Bruner v. Dunaway*, 684 F.2d 422, 426-27 (6th Cir. 1982) [holding that officers who were not present at the time of the alleged assault could not be held liable in a Section 1983 action]; *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 n.3 (1st Cir. 1990) [granting the officers' motion for summary judgment because the officers had no "realistic opportunity" to prevent the attack committed]). Nevertheless, there is no evidence supporting a conclusion that Appleton saw—or had knowledge of— Anderson committing an unconstitutional act and failed to intervene. Thus, Plaintiff fails to demonstrate Appleton "knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known would cause others to inflict a constitutional injury." *See Dubner*, 266 F.3d at 968.

Because Plaintiff fails to identify evidence supporting the conclusion that Appleton was (1) personally involved in the deprivation of her constitutional rights or (2) there is a causal link between his conduct and the alleged constitutional violation by Anderson, her claim for "supervisory liability" under Section 1983 against Appleton fails. *See Hansen*, 885 F.2d at 646; *Starr*, 652 F.3d at 1207. Accordingly, Appleton's motion for summary adjudication of Plaintiff's sixth claim for relief is **GRANTED**.

**IV. Conclusion and Order**

Defendant has carried his burden to demonstrate there are not genuine disputes of material facts related to the claim against him. Further, where a plaintiff fails to identify evidence "concerning an

11

essential element" of her case, the entry of summary judgment is appropriate. *Celotex*, 477 U.S. at 323.

Accordingly, the Court **ORDERS**: Defendant's motion for summary judgment (Doc. 57) is **GRANTED**.

IT IS SO ORDERED.

Dated: __**December 14, 2017**__     _____**/s/ Jennifer L. Thurston**_____
                                                              UNITED STATES MAGISTRATE JUDGE