1

2

3

4

5

6

7

8                              **UNITED STATES DISTRICT COURT**

9                              **EASTERN DISTRICT OF CALIFORNIA**

10

11    SAMANTHA VAZQUEZ,                    )    Case No.: 1:16-cv-1469 - JLT
                                           )
12              Plaintiff,                 )    ORDER GRANTING DEFENDANT'S MOTION
                                           )    FOR SUMMARY JUDGMENT
13         v.                              )
                                           )    (Doc. 58)
14    COUNTY OF KERN, et al.,              )
                                           )
15              Defendants.                )
                                           )
16    _____ )

17         Plaintiff alleges the defendants are liable for civil rights violations arising under 42 U.S.C. §

18    1983, related to incidents while she was incarcerated in a juvenile detention facility. (*See generally*

19    Doc. 37)  Defendant George Anderson argues Plaintiff is unable to succeed on the claims against him,

20    and seeks summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Doc. 58)

21         The Court heard the oral arguments of the parties on December 7, 2017.  For the following

22    reasons, Defendant's motion for summary judgment is **GRANTED**.

23    **I.    Background**[1]

24         "On January 19, 2015, Plaintiff was arrested in Delano, California on an outstanding warrant

25    and taken to Kern County Juvenile Hall."  (DSF 1)  Plaintiff "was housed in Unit 300A (also referred to

26

27    _____
            [1]This section is a summary of both the undisputed facts and the parties' positions in this action.  Facts from the
      parties' Joint Statement of Undisputed Material Facts are identified as "JSF." (Doc. 58-2)  In addition, each of the parties
28    prepared additional facts in support of the motion.  To the extent any facts identified by the parties are undisputed and the
      Court found the evidence cited supports the fact identified, these are identified as "DSF" for Defendant's Separate Facts and
      "PSF" for Plaintiff's Separate Facts.

                                                        1

as '3A') where Defendant Anderson worked." (DSF 2) "Plaintiff and Anderson had met before during another one Plaintiff's detentions at juvenile hall." (JSF 1) "When Plaintiff arrived at juvenile hall on January 19, she asked a staff member if Mr. Anderson was working because she 'needed to talk to him.'" (DSF 3; Doc. 58-6 at 2 Bracamonte Decl. ¶4)

"Anderson has been employed as a Juvenile Correctional Officer (JCO) by Kern County Probation Department since 1990." (JSF 2) He "was a gang intelligence officer, and trained other officers." (DSF 4) Further, "Anderson handled the maintenance details for juvenile hall, including painting and cement work." (JSF 4) Wards at juvenile hall are "frequently" used by JCOs for work details, such as laundry, kitchen, and clean-up. (JSF 3)

"Plaintiff worked details with several staff members, including [] Anderson." (JSF 5) She reports that she "initially liked doing details with Anderson" "because they would listen to music while chipping paint." (DSF 6; Doc. 73 at 6; Vazquez Depo. 71:9-72:1, 97:23:98-1) Plaintiff also said the details "relieved stress and got her out of her room." (DSF 6)

Plaintiff asserts that "at the end of January 2015, Anderson began being 'really friendly' with Plaintiff." (PSF 1, Doc. 88 at 1) She contends Anderson "would talk to her about his personal life, about his kids, and about how she should leave [her] boyfriend and find someone better like him." (*Id.*; *see also* JSF 13; Doc. 37 ¶¶ 2, 23) In addition, "Plaintiff claims [Anderson] called her 'babe'" and "said she had a 'big butt' in her Bob Barker pants." (JSF 11, 12) She also claims Anderson "touched her face," "touched her shoulders," and "took his shirt off in front of her." (JSF 15-17) Further, Plaintiff asserts "Defendant looked in her window when the privacy sign was up," and "looked at her while she was in the shower," on three or four occasions. (JSF 9, 14; Vazquez Depo. 99:3-10)

According to Plaintiff, one day in early February when she was "working details in Room 16" with Anderson, he told Plaintiff to shut the door "and said that he had a dream about [her]." (Vazquez Depo. 96:21-25; *see also* JSF 10, DSF 9) Plaintiff said she asked whether the dream was "rated R or PG," and Anderson "said it's rated R." (*Id.*, 96:24-25) Plaintiff testified:

> I told him oh, wow, I don't want nothing to do with what the heck you're about to say. And he just went along with it and told me, well, my dream was that, you know, I was working inside where -- what would you say, the kitch- -- not the kitchen, where you eat area and that he was on top of the lad- -- stairs or the ladder and that he was riding on the top and he was -- that I had grabbed him by his T-shirt and that he went down and I gave him a kiss and that after that we ended up going to a room and, like, having

fun and stuff.

(*Id.*, 96:25- 96:11)  Plaintiff asserts after telling her about the dream, Anderson "told [her] to get close to him, like, to the point where he had opened his knees and [Plaintiff] was right in the middle of him, and he told [Plaintiff] that he wanted his dream to come true."  (*Id.*, 97:19-22)  Plaintiff testified she "felt really, really awkward," "moved away from him," and "just left it at that."  (*Id.* at 97:24- 98:1)

"On February 10, 2015, plaintiff told Francisco Maldonado, a substance abuse counselor at juvenile hall, that … Anderson told her he had a sexual dream about her."  (DSF 9)  Maldonado reported Plaintiff's allegations, after which "a criminal investigation was commenced by the Bakersfield Police Department."  (JSF 7)

Anderson denies the allegations made by Plaintiff, including that he called Plaintiff "babe," looked into her cell Plaintiff was changing or using her toilet, looked at her in the shower, touched any part of Plaintiff's body, made comments about her in her shower gown, or said that she had "a big butt." (Anderson Depo. 9:6-10:14)

## II.  Legal Standards for Summary Judgment

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Matsuhita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim.  Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . .") (internal quotation marks and citation omitted).  The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same.  *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Summary judgment, or summary adjudication, should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987). A party demonstrates summary adjudication is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue of a material fact. Fed R. Civ. P. 56(e); *Matsuhita*, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 587. The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits. *Id.* at 586 n.11; Fed. R. Civ. P. 56(c). Further, the opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The Court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and judgment is appropriate as a matter of law. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). In resolving a motion for summary judgment, the Court can only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). Further, evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr*,

285 F.3d at 772; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

**III.     Discussion and Analysis**

Anderson seeks summary adjudication of Plaintiff's first and second claims for violations of her constitutional rights.  (Doc. 58) Anderson "denies that Plaintiff's claims have any merit," and argues that "even assuming for the sake of argument that every word Plaintiff says about him is true, there is still no Constitutional deprivation."  (*Id.* at 8)  Plaintiff opposes summary judgment, asserting "[e]ven where the basic facts are undisputed, … reasonable minds could differ on the inferences to be drawn from those facts."  (Doc. 71 at 21; Doc. 95 at 21)

**A.     Section 1983 Standards**

Plaintiff contends Anderson is liable for violations of 42 U.S.C. § 1983 (Doc. 37 at 12-13), which "is a method for vindicating federal rights elsewhere conferred."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  In relevant part, Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C. § 1983.  To establish a Section 1983 violation, a plaintiff must show (1) deprivation of a constitutional right and (2) a person who committed the alleged violation acted under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

A plaintiff must allege a specific injury was suffered and show causal relationship between the defendant's conduct and the injury suffered.  *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976).  A person deprives another of a right "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  In other words, "[s]ome culpable action or in action must be attributable to defendants."  *See Puckett v. Corcoran Prison - CDCR*, 2012 WL 1292573, at *2 (E.D. Cal. Apr. 13, 2012).

Plaintiff alleges that Anderson "sexually abused Plaintiff," thereby violating her "constitutional rights as guaranteed by the Fourth, Eighth, and Fourteenth Amendments to the US Constitution."  (Doc. 37 at 12)  In addition, she contends that Anderson acted in a manner that violated her "interest under

the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience." (*Id.* at 13)

**B.      Plaintiff's Status as a Detainee**

As an initial matter, claims by pretrial detainees related to their confinement arise under the Fourteenth Amendment, whereas claims by prisoners arise under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions"). The parties agree that Plaintiff was a detainee at the time of the events alleged in the complaint. (*See* Doc. 71 at 26; Doc. 87 at 4)

Given Plaintiff's status as a detainee, her claims arise under "the more protective substantive due process standard" of the Fourteenth Amendment rather than the Eighth Amendment.[2] *Jones v. Blanas*, 393 F.3d 918, 931-33 (9th Cir. 2004); *see also Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) ("Because [the plaintiff] had not been convicted of a crime, but had only been arrested, his rights derive from the due process clause rather than the Eighth Amendment's protection against cruel and unusual punishment"). Moreover, at the hearing and in the opposition to the motion, plaintiff's counsel argued that the 14th Amendment and not the Eighth applies here. (Doc. 95 at 26) Consequently, a claim for a violation of the Eighth Amendment by Plaintiff fails as a matter of law. Accordingly, Defendant's motion to summary adjudication of the First Claim for Relief, to the extent the cause of action is based upon a violation of the Eighth Amendment, is **GRANTED**.

**C.      "Sexual Abuse" Claims**

Plaintiff contends the reported conduct of Anderson "is defined as 'sexual abuse' under federal guidelines promulgated pursuant to the Prison Rape Elimination Act." (Doc. 37 at 2) Anderson argues the PREA does not "serve[] as the guideline definition of sexual abuse for constitutional violations." (Doc. 58 at 8) Further, according to Anderson, assuming the allegations of Plaintiff are true, he also

---

[2] Notably, the Ninth Circuit observed: "The California Supreme Court has declared that the cruel and unusual punishment provisions of the United States and California Constitutions do not apply to juvenile commitments, because the purpose of such a commitment is rehabilitation, not punishment." *Manney v. Cabell*, 654 F.2d 1280, 1284 n.5 (1980) (citing *People v. Olivas*, 17 Cal.3d 236, 255 (1976); *In re Gary W.*, 5 Cal.3d 296, 301-03 (1971)). Therefore, the Court determined that "[t]he correct standard of review… [was] therefore under the Due Process Clause" for a juvenile detainee. *Id.*

"[d]id not violate Plaintiff's constitutional rights through comments or unwelcomed remarks and "non-sexual physical contact." (*Id.* at 8-10)

### 1.   The PREA

As Anderson observes, in the operative complaint—and the opposition to the pending motion—Plaintiff relies upon the definition of "sexual abuse" under the PREA to address the reported misconduct.  (*See* Doc. 37 at 2, 8; Doc. 71 at 19; Doc. 95 at 19)  Plaintiff contends that, under the PREA, "sexual abuse is defined to include, without limitation, sexual voyeurism by staff," as well as grooming and exploitation.  (*Id.*, ¶¶ 2, 33)  However, as this Court previously observed, the PREA definition of sexual abuse—which is broader than state laws governing sexual assault and sexual battery—does not govern here, as there is no private right of action under the PREA.  *See Reed v. Racklin*, 2017 U.S. Dist. LEXIS 90090 at *6, 2017 WL 2535388 (E.D. Cal. June 9, 2017) ("PREA does not give rise to a private cause of action"); *Faz v. North Kern State Prison*, 2011 U.S. Dist. LEXIS at *13-14, 2011 WL 4565918 (E.D. Cal. Sept. 29, 2011) ("the PREA does not create a private right of action"). Thus, there is no cogent rationale for adopting the standards under PREA in light of the fact that the plaintiff cannot enforce the Act in this action.  Thus, the Court must look to the definitions of sexual assault and harassment as defined by the courts when evaluating Plaintiff's claims for violations of her constitutional rights.

### 2.   Legal Standards

"When the government holds a person in confinement as a pretrial detainee, it 'may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment or otherwise violate the Constitution' … because 'under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.'" *Byrd v. Maricopa County Sheriff's Dept.*, 656 F.3d 1205, 1216 (9th Cir. 2009) (quoting *Bell*, 441 U.S. at 535, 536-37)  This differs from "prisoners, who may be subject to punishment so long as it does not violate the Eighth Amendment's bar against cruel and unusual punishment." *Id.* (quoting *Pierce v. County of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008)).  Nevertheless, in evaluating claims for civil rights violations, the Court applies the same standards. *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998); *Gibson*, 290 F.3d at 1187 (with issues related to health and safety, "the due process

clause imposes, at a minimum, the same duty the Eighth Amendment imposes").

"Whether a particular event or condition in fact constitutes 'cruel and unusual punishment' is gauged against 'the evolving standards of decency that mark the progress of a maturing society.'" *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). However, the Supreme Court has determined that "when prison officials maliciously and sadistically use force to cause harm contemporary standards of decency are always violated." *Id.* (citing *Hudson*, 503 U.S. at 9). In such circumstances, "the only requirement is that the officer's actions be 'offensive to human dignity,'" and a physical injury is not necessary to establish a claim for a civil rights violation cause of action. *Id.* (quoting *Felix v. McCarthy*, 939 F.2d 699, 702 (9th Cir. 1991)).

A sexual assault on an inmate by a prison official implicates the rights protected by the Eighth Amendment. *Schwenk*, 204 F.3d at 1197; *see also Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) ("Sexual abuse may violate contemporary standards of decency and can cause severe physical and psychological harm"). For this reason, severe or repetitive sexual abuse of an inmate by a prison officer can be "objectively, sufficiently serious" to constitute an Eighth Amendment violation. *Id.; see Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (noting the list of conditions held cruel and unusual by the Supreme Court is not exclusive). Sexual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is "simply not part of the penalty that criminal offenders pay for their offenses against society." *Boddie*, 105 F.3d at 861 (quoting, *Farmer*, 511 U.S. at 834).

On the other hand, the Eighth Amendment protections "do not necessarily extend to mere verbal sexual harassment." *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004); *Minifield v. Butikofer*, 298 F. Supp. 2d 900, 903-04 (N.D. Cal. 2004) ("Allegations of verbal harassment and abuse fail to state a claim cognizable under 42 U.S.C. § 1983"). Courts have determined repeatedly determined such conduct does not satisfy the "unnecessary and wanton infliction of pain" standard under the Eighth Amendment. *See, e.g.*, *Blueford v. Prunty*, 108 F.3d 251, 256 (9th Cir. 1997) (affirming summary adjudication in favor of the prison officials where "the only arguably sexually harassing conduct… was verbal"); *Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n. 11 (10th Cir. 1998)

(allegations that a county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Zander v. McGinnis*, 1998 U.S. App. LEXIS 13533, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (finding a prisoner's claim that a guard called him "pet names" for ten months failed to support an Eighth Amendment claim "because allegations of verbal abuse do not rise to the level of a constitutional violation").

### 3. Plaintiff's Claims

Plaintiff asserts that "at the end of January 2015, Anderson began being 'really friendly," and "would talk to her about his personal life, about his kids, and about how she should leave [her] boyfriend and find someone better like him." (PSF 1, Doc. 88 at 1; *see also* JSF 13; Doc. 37 ¶¶ 2, 23) In addition, "Plaintiff claims [Anderson] called her 'babe'" and "said she had a 'big butt' in her Bob Barker pants." (JSF 11, 12) She also claims Anderson "touched her face," "touched her shoulders," and "took his shirt off in front of her." (JSF 15-17) Further, Plaintiff asserts that on one occasion, Anderson told Plaintiff he had an "R-rated" dream about her, then proceed to open his knees while Plaintiff "was right in the middle of him, and he told [Plaintiff] that he wanted his dream to come true." (Vazquez Depo., 96:24- 97: 22; *see also* JSF 10, DSF 9) Plaintiff testified the encounter made her feel "really, really awkward." (*Id.*, 97:24- 98:1)

Anderson contends these allegations—even assumed as true—are insufficient to support a claim that he violated Plaintiff's constitutional rights. (Doc. 58 at 10-12) He observes: "Various circuits… have found substantive due process violations of one's right to bodily integrity when state actors have engaged in lewd, nonconsensual touching of individuals." (*Id.* at 11, citing, *e.g.*, *Haberthur v. City of Raymore, Missouri*, 119 F.3d 720 (8th Cir. 1997); *Lillard v. Shelby County Bd. Of Educ.*, 76 F.3d 716, (6th Cir. 1996). On the other hand, Plaintiff contends "there is an allegation of unwanted touching in this case," which she asserts is sufficient to support her claim for a constitutional violation because she was a detainee and "enjoys the protections of the Fourteenth Amendment and a higher standard than the one used in many of the cases Defendants cite." (Doc. 71 at 27; Doc. 95 at 27)

Significantly, as discussed above, the Court looks to the standards of the Eighth Amendment to evaluate even the claims of detainees in the context of claims regarding health and safety. *See Gibson*, 290 F.3d at 1187. In doing so, courts have determined that isolated incidents of sexual touching—even

when coupled with occasional offensive sexual remarks— do not rise to the level of a constitutional violation. *See, e.g., Watison v. Carter*, 668 F.3d 1108, 1112-13 (9th Cir. 2012) (where an inmate asserted an officer entered his cell and approached the inmate while he was on the toilet, then rubbed his thigh against the inmate's thigh, "began smiling in a sexual [manner], and left the cell laughing," the allegations were not sufficient to support a violation of the Eighth Amendment); *Jackson v. Madery*, 158 Fed.Appx. 656, 662 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where the inmate failed to assert that he feared sexual abuse, the court concluded two brief touches to his buttocks could not be construed as sexual assault); *Boddie*, 105 F.3d at 859-61 (finding a prisoner failed to state a violation of his constitutional rights where he asserted—on different occasions— a female corrections officer made a pass at him, touched him on several occasions, and called him a "sexy black devil"). Thus, incidents that cause "humiliation" may "not rise to the level of severe psychological pain required to state an Eighth Amendment claim." *Watison*, 688 F.3d at 1113.

With these cases in mind, the Court is unable to find the facts asserted by the plaintiff support a claim for sexual abuse under the Constitution. Anderson calling Plaintiff "babe," commenting on her body, and telling her about his dream while asking her to step quite close to him does not constitute more than sexual harassment. Further, Anderson's touching Plaintiff's face and shoulder does not render this claim the manner of which is prohibited under the constitution. Indeed, in *Boddie*, the facts before the Second Circuit were more egregious than those claimed by Plaintiff here. In *Boddie*, the plaintiff, a male prisoner, alleged that a female prison guard squeezed his hand, touched his penis, and made sexually suggestive comments, calling him "sexy black devil." *Id.* at 859-60. On another occasion, the told the inmate to take off his sweatshirt and twice pinned him to a door with her body. *Id.* The court concluded that "no single incident that he described was severe enough to be 'objectively, sufficiently serious.' Nor were the incidents cumulatively egregious in the harm they inflicted." *Id.* at 861. The court found these incidents did "not involve a harm of federal constitutional proportions." *Id.* Likewise, here, the Court is unable to find harm of constitutional proportions.

///

### D. Right to Privacy

The privacy rights of both pretrial detainees and prisoners are "severely curtailed" by their confinement. *United States v. Van Poyck*, 77 F.3d 285, 291 (9th Cir. 1996). Nevertheless, "[i]t is clearly established that the Fourteenth Amendment protects a sphere of privacy, and the most 'basic subject of privacy [is] the naked body.'" *Hydrick v. Hunter*, 500 F.3d 978, 1000 (9th Cir. 2007) (quoting *Grummett v. Rushen*, 779 F.2d 491, 494 (9th Cir. 1985)). "While the circumstances of institutional life demand that privacy be limited, it is clearly established that gratuitous invasions of privacy violate the Fourteenth Amendment." *Id.* However, "this calls for a highly factual inquiry." *Id.* Factors the Court has considered include: "the gender of those prison officials who viewed inmates, the angle and duration of viewing, and the steps the prison had taken to minimize invasions of privacy." *Id.*, citing *Grummett*, 779 F.2d at 494-95.

For example, in *Grummett*, the Court considered a claim by male inmates that their right to privacy was violated by female officers viewing them while dressing, showering, being strip searched, or using the toilet. *Id.*, 779 F.2d at 492. The Ninth Circuit assumed "the interest in not being viewed naked by members of the opposite sex is protected by the right of privacy." *Id.*, 779 F.2d at 494. The Court discussed the circumstances in which female officers were observing male inmates, noting:

> Female guards are not assigned to positions requiring unrestricted and frequent surveillance. Rather, the positions to which they are assigned require infrequent and casual observation, or observation at a distance. Female guards working the tiers walk past the cells routinely, but do not stop for prolonged inspection. When they are not walking down the tiers, their view of the inmates in their cells is circumscribed by the cell bars and by the distance and angle of their stations. Likewise, the observations by the female correctional officers stationed on the gunrails overlooking the tiers and the yard areas are obscured by the angle and distance of their locations. Female guards do not accompany male inmates to the individual or gang showers, and are not stationed on the tiers where the showers are located. Females are assigned to the more distant gunrail position overlooking showers, where, again, the surveillance is obscured.

*Id.* at 494-95. The Ninth Circuit concluded that these circumstances were not "so degrading as to require intervention by [the] court," and there was no Fourteenth Amendment violation. *Id.* at 495. Likewise, the Court found there was no Fourth Amendment violation because the female guards' viewing of unclothed inmates was "infrequent and irregular," and the guards were not "stationed at those positions which involve close and prolonged surveillance of disrobed inmates." *Id.*

In *Michenfelder v. Sumner*, 860 F.2d 328 (1988), the Ninth Circuit also addressed a claim of a

male inmate challenging the stationing of female officers on shower duty and involvement in strip searches as a violation of his right to privacy. *Id.* at 333-34. The Court indicated "the issue … is whether [the prison's] female officers regularly or frequently observe unclothed inmates without a legitimate reason for doing so." *Id.* at 334. The Ninth Circuit found that a division of responsibilities between male and female guards was a reasonable attempt to accommodate the tension between inmates' privacy concerns and the prison's internal security needs and equal employment concerns. *Id.* In addition, the Court found the right to privacy was not violated due to the limited nature of the guards' involvement in the searches, because the evidence showed observations were made from video monitors that provided "an indistinct, limited view." *Id.* The Court found "[e]vidence of female officers' role in shower duty likewise did not establish an inappropriate amount of contact with disrobed prisoners." *Id.* Accordingly, the Court concluded Michenfelder failed to establish violations of his Fourth and Eighth Amendment rights. *Id.* at 338.

In *Sepulveda v. Ramirez*, the Ninth Circuit rejected a parole officer's claim that he was entitled to qualified immunity for a claim that he walked into a bathroom stall and observed a partially clothed female parolee provide a urine sample. *Id.*, 967 F.2d 1419 (9th Cir. 1992). The Court noted the officer "walked into the stall where Sepulveda was partially unclothed and seated on the toilet" without her permission, and laughed when she asked him to leave, saying Sepulveda "did not have anything he had not seen before." *Id.* at 1415. The officer remained in the stall while she finished urinating, cleaned herself, and dressed. *Id.* Without explaining its reasoning, the Court held that, if established, this conduct by the officer violated the parolee's right to privacy. *Id.* at 1416. However, the Court also noted that if the officer's view "was generally obscured and from a distance," the result may have been different. *See id.* (citing *Grummett*, 779 F.2d at 495)

Years later, in *Somers v. Thurman*, 109 F.3d 614 (9th Cir. 1997), the Ninth Circuit considered an male inmate's claim that his constitutional rights under the Fourth Amendment were violated by female officers conducting visual body cavity searches on a regular basis and watching him shower. *Id.* at 616. Somers also asserted the prison officials "'pointed at him' and 'joked among themselves' during the searches and during his showers, behavior he characterize[d] as 'gawking.'" *Id.* In evaluating whether to apply the doctrine of qualified immunity, the Court reviewed its decisions in

*Grummett, Michenfelder,* and *Sepulveda. See Somers*, 109 F.3d at 619-20.  The Court observed it never "held that guards of the opposite sex are forbidden from viewing showering inmates." *Id.* at 620. The Court continued: "Taken together, however, one might read *Grummett, Michenfelder*, and *Sepulveda* to suggest that up close, frequent, and intentional viewings by guards of the opposite sex could violate a prisoner's privacy rights." *Id.*  The Court found it significant that the actions alleged by Somers "did not involve any physical conduct," and concluded "gawking, pointing, and joking" did not violate the Eighth Amendment. *Id.* at 624.

Most recently, in *Byrd v. Maricopa County Sheriff's Dept.*, 845 F.3d 919 (9th Cir. 2017), the Ninth Circuit addressed the claims of a pre-trial detainee, who alleged the facility had a "policy of allowing female guards to observe daily, from four to five feet away, male pretrial detainees showering and using the bathroom." *Id.* at 921.  The district court reviewed Byrd's allegations pursuant to 28 U.S.C. § 1915A, and dismissed the complaint.  *Id.* Upon appeal, the Ninth Circuit observed:

> First, while the observation occurred in prison, where there are limited privacy rights, *see Hudson v. Palmer*, 468 U.S. 517, 527, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984), Byrd's status as a pretrial detainee suggests that he may have had greater rights than convicted prisoners. *See Stone v. City & County of S.F.*, 968 F.2d 850, 857 n.10 (9th Cir. 1992) (noting that "pretrial detainees . . . possess greater constitutional rights than prisoners"). That alone is enough to distinguish Byrd's allegations from precedent concerning convicted prisoners, which the district court thought foreclosed Byrd's claims.
> Second, even if Byrd were a convicted prisoner, Byrd's allegations survive section 1915A dismissal. Assuming that the female guards could view male pretrial detainees while showering and using the toilet frequently and up close, the scope and manner of the intrusions were far broader than those our court previously has approved. In *Grummett v. Rushen*, we upheld cross-gender surveillance of showers specifically because "such actual viewing of the inmates is infrequent and irregular." 779 F.2d 491, 495 (9th Cir. 1985). Similarly, in *Michenfelder v. Sumner*, we held that female guards observing male prisoner body cavity searches from a control booth that provided limited view of the searches, and female guards sometimes conducting male prisoner shower duty, were reasonable because the female guards were "not routinely present for strip searches" and observation from video monitors "would provide at most an indistinct, limited view." 860 F.2d 328, 334 (9th Cir. 1988).

*Id.* at 922.  The Court found the case was, in its screening stage, "distinguishable from *Grummett* and *Michenfelder* because the observation was allegedly not infrequent, irregular, or from a distance, but frequent and just a few feet away." *Id.* at 923.  Therefore, the Ninth Circuit concluded the "dismissal … was premature," and the claim was "sufficient to warrant ordering defendants to file an answer." *Id.* (citation omitted).

13

### 1. The Parties' Arguments

Plaintiff asserts that Anderson "looked in her window when the privacy sign was up" and "looked at her while she used the shower." (JSF 9, 14) Anderson argues that he did not violate "Plaintiff's constitutional rights through visual observation as the viewing was infrequent, generally obscured, at a distance, and reasonably related to institutional needs." (Doc. 58 at 9, emphasis omitted) Anderson contends, "Assuming Plaintiff's claims are true, Anderson's glance into Plaintiff's room when her privacy sign was up was not only brief and infrequent (occurring only one time), but was also reasonably related to the welfare of wards housed within the facility." (*Id.* at 9-10) Further, Anderson contends his "presence during the showers does not constitute a constitutional violation." (*Id.* at 10) According to Anderson, "Plaintiff's subjective belief that she was being watched does not give rise to a constitutional violation. Likewise, Plaintiff cannot testify with certainty that Anderson was actually observing her from his position behind the computer, which provided him with an indistinct and limited view." (*Id.*)

On the other hand, Plaintiff presents evidence that there was "a gap in the shower curtains in Unit 300A, which would allow someone sitting at the staff counter to see into the showers." (Doc. 71 at 12, citing Suender Depo., 28:1-12; *see also* Villegas Depo., 42:12-43:3) Janell Davidson, "a duty supervisor" at juvenile hall, testified that depending on where someone sat or stood at the counter, there was a view into the shower area. (Depo. 6:6-7, 14:9-15:6) According to Anallely Villegas, a ward at juvenile hall, Anderson was the only male staff member who sat at the counter while female wards showered, and other male staff members would go to another unit or to a little library. (Villegas Depo. 45:12-19) Ms. Villegas observed Anderson sitting at the staff counter while Plaintiff was showering. (*Id.*, 45:20-22) In addition, Ms. Villegas saw Anderson "[l]ook through Samantha's window" while she had her privacy sign up," which indicated Plaintiff was using the restroom or changing her clothes. (*Id.* at 46:16-47:19)

### 2. Analysis of the Evidence

The evidence before this Court clearly indicates there is a dispute regarding whether—and to what extent—Anderson watched Plaintiff in the shower. Taking all facts in Plaintiff's favor, the Court must consider that Anderson looked in Plaintiff's room once when her privacy sign was up—indicating

that he looked in her room while she was engaged in a private act—and watched Plaintiff shower "three to four times" (*see* Vazquez Depo. 99:11-18), to determine whether this reaches the level of a constitutional violation.

In *Morris v. Newland*, this Court considered the claim of an inmate plaintiff that officers violated his constitutional rights because female guards "made sure to observe plaintiff at length in the shower and in his cell." *Id.*, 2007 WL 707525 at *1 (E.D. Cal. Mar. 6, 2007). The defendants moved to dismiss, asserting the plaintiff failed to state a claim. *Id.* at *2. The Court noted Ninth Circuit authority "implicate[d] circumstances more severe than those set forth… with respect to plaintiff's cross-gender viewing claims." *Id.* at *4. For example, the Court noted that in *Somers*, the Ninth Circuit found the plaintiff failed to state a constitutional violation "even where the female officials had engaged in 'gawking' at the plaintiff and had pointed at him in the shower 'and joked among themselves.'" *Id.*, citing *Somers*, 109 F.3d at 622. In light of this, the Court found "the[] intentional observation of [the plaintiff] in the shower and in his housing unit in various states of undress" failed to rise to the level of a violation of the Fourth and Eighth Amendments. *Id.* at *5, *adopted by* 2007 WL 987846 (E.D. Cal. Mar. 30, 2007). Likewise, here, Plaintiff alleges Anderson intentionally viewed in her in the shower on several occasions and once looked in her room while her privacy sign was up. Nevertheless, as this Court determined in *Morris*, the circumstances do not rise to the level of the actions addressed in *Somers*.

The evidence before the Court does not demonstrate that Anderson "regularly or frequently" observed Plaintiff in her room or in the shower. In addition, the evidence does not establish that Anderson engaged in "close and prolonged surveillance" of Plaintiff, such that a constitutional violation occurred. *See Grummett*, 779 F.2d at 494-95; *Michenfelder*, 860 F.2d at 334. In contrast to the facts before the Court in *Sepulveda,* Anderson was not in a small, confined space with Plaintiff when the viewing occurred. Further, his viewing Plaintiff in the shower or her room while the privacy sign was up occurred only a handful of times, not on a daily basis as the plaintiff alleged in *Bryd*, where the Court recognized viewing that was "infrequent, irregular, or from a distance" has not been recognized as a constitutional violation by the Ninth Circuit. *See id.*, 845 F.3d at 921, 923. Indeed, even where the plaintiff alleged that the prison officials were "gawking" and "joking" as he showered,

the Ninth Circuit found the conduct did not rise to the level of a constitutional violation. *Somers*, 109 F.3d at 624.

Consequently, taking the facts in the light most favorable to Plaintiff, Anderson's viewings were not sufficiently frequent to be a violation of Plaintiff's right to privacy under the Fourth and Fourteenth Amendments. *See Somers*, 109 F.3d at 620; *Grummett*, 779 F.2d at 494-95. Thus, Anderson's motion for summary adjudication of Plaintiff's claims, to the extent they are based upon a violation of her right to privacy, is **GRANTED**.

**E.     Qualified Immunity**

Anderson contends he is entitled to qualified immunity for the conduct reported by Plaintiff in this action. (Doc. 58 at 12)  Qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine of qualified immunity "balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

The threshold inquiry to a qualified immunity determination is whether the facts alleged, when taken in the light most favorable to the plaintiff, demonstrate that the official's conduct violated a statutory or constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If the alleged conduct would not be considered a violation, the inquiry stops and the defense of qualified immunity applies. *See id.*  However, if a constitutional violation occurred, the Court must next determine whether the statutory or constitutional right was "clearly established."  *Id.*  Defendants have the burden to prove they are entitled to qualified immunity. *Moreno v. Baca,* 431 F.3d 633, 638 (9th Cir.2005).

1.     Whether a constitutional violation occurred

The facts taken in Plaintiff's favor support a conclusion that her right to privacy was not violated by Anderson, and her claim of sexual abuse does not rise to the level of a constitutional violation.  Accordingly, for purposes of summary judgment, the inquiry generally would stop here.  *See Saucier*, 533 U.S. at 201.

<u>2.      Whether the right was "clearly established"</u>

Even assuming that Anderson's conduct arose to the level of a constitutional violation, the Court must determine whether the law "gave 'fair warning' ... that [his] conduct was unconstitutional." *Clement v. Gomez*, 298 F.3d 898, 906 (2002) (quoting *Saucier,* 533 U.S. at 202). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The Ninth Circuit determined "[i]t is clearly established that the Fourteenth Amendment protects a sphere of privacy, and the most 'basic subject of privacy [is] the naked body.'" *Hydrick*, 500 F.3d at 1000 (9th Cir. 2007) (quoting *Grummett*, 779 F.2d at 494). In addition, in evaluating whether to apply the doctrine of qualified immunity to a right to privacy claim, the Ninth Circuit observed that, taken together, *Grummett, Michenfelder,* and *Sepulveda* and indicated "up close, frequent, and intentional viewings by guards of the opposite sex could violate a prisoner's privacy rights." *See Somers*, 109 F.3d at 620.

Further, the courts have determined that sexual assault on an inmate by a prison official implicates the rights protected by the constitution. *Schwenk*, 204 F.3d at 1197; *Boddie*, 105 F.3d at 861. However, only severe or repetitive sexual abuse of an inmate by a prison officer can be "objectively, sufficiently serious" to constitute an Eighth Amendment violation. *Id.* Courts have repeatedly determined that constitutional protections "do not necessarily extend to mere verbal sexual harassment," and even when coupled with isolated incidents of touching, there is no constitutional violation. *See Austin*, 367 F.3d at 1171; *Watison*, 668 F.3d at 1112-13; *see also Boddie*, 105 F.3d at 859-61 (finding a prisoner failed to state a violation of his constitutional rights where he asserted a female corrections officer made a pass at him, touched him on several occasions, and gave him a nickname); *Morales*, 278 F.3d at 132 (2nd Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her did not rise to level of a constitutional violation).

In light of the Ninth Circuit authority discussed above, it is not clear that a reasonable officer would be aware the conduct identified by Plaintiff—which included infrequent viewing in a state of

undress and sexual harassment— was *unconstitutional*.  Accordingly, the Court finds the application of qualified immunity should be applied.

**IV.    Conclusion and Order**

Anderson has carried his burden to demonstrate there are not genuine disputes of material facts related to the claim against him.  Further, where a plaintiff fails to identify evidence "concerning an essential element" of her case, the entry of summary judgment is appropriate. *Celotex*, 477 U.S. at 323.

Accordingly, the Court **ORDERS**: Defendant's motion for summary judgment (Doc. 58) is **GRANTED**. [3]

IT IS SO ORDERED.

Dated:  __**December 14, 2017**__          _____**/s/ Jennifer L. Thurston**
                                                              UNITED STATES MAGISTRATE JUDGE

---

[3] In granting judgment in Anderson's favor, the Court feels compelled to state that the conduct at issue, if true, is absolutely unacceptable.   Nevertheless, it does not implicate a wrong of constitutional proportions.  The Court makes no comment as to whether the claims would impose liability under state law.