**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAMANTHA VAZQUEZ,<br><br>    Plaintiff,<br><br>v.<br><br>COUNTY OF KERN, et al.<br><br>    Defendants. | Case No.: 1:16-cv-01469 - JLT<br><br>ORDER ON DEFENDANTS' COST BILLS<br><br>(Docs. 108, 110) |

    The defendants have filed their cost bills. (Docs. 108, 110) Samantha Vazquez objects and asserts that the Court should not award costs but, if it does, the costs should be reduced in many respects. For the reasons set forth below, the Court **GRANTS IN PART** the costs sought and the plaintiff's objections are **SUSTAINED IN PART**.

**I.    Background**

    While incarcerated at juvenile hall, the plaintiff alleged she was the victim of "grooming, exploitation, voyeurism and sexual abuse by Defendant Anderson." (Doc. 37 at 2, ¶ 2) Appleton was Anderson's direct supervisor and, consequently, the plaintiff asserted that he was obligated to ensure Anderson complied with policies and procedures of the institution, including those related to supervising showers of wards, being alone in the rooms with wards and sexual abuse of the wards. The plaintiff alleged there was evidence that Appleton was aware of Anderson's violation of these policies but failed to act. Finally, the plaintiff alleged the County of Kern had a custom or policy which caused

1

her to suffer constitutional deprivations. She alleged that she suffered as a result of the defendants' actions and sought damages.

The Court granted Anderson's and Appleton's motions for summary judgment (Docs. 96, 97) and entered judgment on behalf of all defendants (Doc. 105). For purposes of the motions, the Court accepted as true that the acts at issue occurred but determined that these acts did not violate the Constitution. (Doc. 97 at 18, n. 3) Ms. Vazquez appealed. (Doc. 106)

Despite the plaintiff's urging, the Court refused the plaintiff's request the stay without considering the defendants' cost bills to allow the appeal to proceed. (Doc. 119) However, it granted her additional time to file her objections to the cost bill (Doc. 113). Therefore, the cost bills[1] and the plaintiff's objections are now before the Court.

## II.     Legal Standards

Rule 54 of the Federal Rules of Civil Procedure states, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "Rule 54(d) creates a presumption for awarding costs to prevailing parties; the losing party must show why costs should not be awarded." Save Our Valley v. Sound Transit, 335 F.3d 932, 944–45 (9th Cir. 2003). A district court declining to award costs to the prevailing party must specify its reasons for doing so, while a district court following the presumption need not specify any reason for its decision. Id. at 945.

## III.    Discussion and Analysis

The plaintiff argues that the Court should not award costs and relies upon Mexican-American Educators v. State of California, 231 F.3d 572, 591 (9th Cir. 2000), for this proposition. (at 2-7) In particular, Ms. Vazquez argues that her case raised issues of "substantial public importance" and argues she sought to bring to light the deficiencies in the juvenile hall systems that allowed her and others to be victimized. (Doc. 120 at 4-5) She argues that the case raised close and difficult issues (Id. at 5), that her limited financial resources militate against an award of costs and points to the economic disparity between her and the defendants Id. at 6). Finally, she argues that if costs are awarded there would be a

---

[1] In their reply, the defendants withdraw certain costs. Thus, the Court does not consider these costs and they will not be awarded.

2

chilling effect on future actions. The Court disagrees.

First, the Court agrees that whether those who are vested with the responsibility to act as the custodial officers of juveniles are given unchecked ability to take advantage of them is a question of grave public importance. This case, however, is quite different from the situation encountered in Mexican-American Educators in which the court and the public were first apprized of the claims through the filing of the litigation. Indeed, by the time all three of the cases were filed, the Kern County Probation Department had undertaken an investigation to determine whether the claims were true in whole or in part.

Moreover, the Court is well-aware, as is counsel in this case[2], that this is not the only case that raised this issue. Indeed, the plaintiff's attorneys filed two cases *before* this one raising the same issues. (See Doe v. County of Kern, Case No. 1:15-cv-01637 JLT ("Doe 1") and Doe v. County of Kern, Case No.: 1:15-cv-01641 JLT and ("Doe 2").) One of these cases specifically named Anderson and alleged unlawful acts by him that, at a minimum, constituted sexual battery. These earlier cases alleged that they were cases of "public interest" and that the County of Kern maintained an unlawful policy of indifference to the rights and safety of the juveniles. (Doe 1 Doc 1 at ¶¶ 4, 55, 55(a)-55(g); Doe 2 Doc 1 at ¶¶ 4, 53, 53(a)-53(g)) Arguably, these earlier cases asserted significantly more serious claims than the ones raised here. Likewise, the Court is aware that the local media discussed these cases at length such that there was no risk that the issues would not be known by the public such to pressure the entity to make change.

Moreover, unlike here, during the pendency of Mexican-American Educators, the State took mitigating action which demonstrated that the plaintiffs' case had some legal as well as factual merit. Mexican-American Educators, at 592. In contrast, in the motion for summary judgment determined here, there was no challenge directed to the factual merits (though the Court understands from the defendants' positions in this litigation that the facts were disputed) but only to the legal effect of those allegations. Significantly, the Court found the plaintiff's case as framed had no legal merit.[3]

---

[2] The same attorneys were counsel of record in the other two cases as well.

[3] Ms. Vazquez questions the wisdom of a rule that would require her to pay the litigation costs of the person that sexually assaulted her. The plaintiff's outrage is equally shared by defendants who are sued despite that liability cannot be imposed.

Second, the legal issues raised in this case raised were not "close" nor were they particularly difficult. Rather, for the plaintiff to succeed, the Court would have been required to announce a new definition of "sexual assault" despite that it would have to have been different from that recognized already in this Circuit. This was a keenly important impediment and would have been easy issue to uncover pre-litigation and, presumably, the plaintiff knew this and the risks pursuing this course of action would present her but, nonetheless, decided to engage in constitutional litigation.

Third, the Court is sympathetic to Ms. Vazquez's financial condition. It appears she was indigent at the time she filed this litigation, though she did not seek to proceed *in forma pauperis*. Now, she has two children with a third due shortly and is in a live-in, romantic relationship with a man who does not work. (Doc. 121-1 at 6) She, the boyfriend and her children live with the plaintiff's parents who, seemingly, provide whatever the adults and children need at least to the extent that governmental aid does not cover it. Id. Thus, it appears that the plaintiff's economic situation is arguably worse than when she initiated the litigation. On the other hand, the Court presumes that before she filed suit, she considered the detriments that losing this case would impose on her. Unlike many litigants in this District, she had the benefit of counsel who must have advised her on this topic and, presumably, she decided to assume the risk of loss nonetheless. Even still, the Court affords this factor great weight in favor of refusing to award costs.

Fourth, though the Court recognizes that the plaintiff and the County of Kern have significantly different economic realities, this is true for even the wealthiest of people. It is the rare person indeed who has assets that could compare to those of a governmental entity. Thus, the Court rejects that this factor weighs too heavily here. On the other hand, the Court has no information about the economic condition of either individual defendant. The Court can surmise that because they are both employed, they are financially better able than Ms. Vasquez to bear the costs of their defense[4], but this is not necessarily the case.[5]

---

Thus, though the Court agrees with and understands the plaintiff's position, the Court is not permitted to question the wisdom of enacting Rule 54; rather, it is required to apply the law others have decided to enact.
  That being said, at this stage, the Court does not doubt that sexual assault occurred or assume that it did occur. This determination was simply unnecessary to the Court's calculus and, consequently, was not made.
[4] The plaintiff seems to assume that the County of Kern will pay the individual defendants' costs. Though this seems to be a good assumption as to Mr. Appleton, the Court has no evidence this is true as to Anderson. Due to the fact that County

4

Finally, the Court rejects any substantial chilling effect would arise if the Court imposes costs in this case award is any different from the chilling effect posed by the mere existence of Rule 54. Indeed, as noted above, the plaintiff would have *had* to have received advice from her attorney warning her that if she lost her case that, in general, the Court would be *obligated* to award costs against her. To be of any value, part of this advice *had* to include the amount of discovery that would be needed such to provide some estimate of the potential costs. Despite the state of the law related to costs under Rule 54 and despite the relatively minimal discretion of courts to deny costs, Ms. Vazquez decided to sue in this forum, nevertheless.

However, based upon the considerations of the equities, the Court will refuse to award certain costs that it might otherwise allow.

**A.    Costs**

The Court may impose only those costs which were "necessarily incurred in the case." 28 U.S.C. § 1924; L.R. 292(b). However, "the better course" when deciding whether to award specific costs to a prevailing party was "to hew closely to the statute's language, scheme, and context, recognizing that § 1920 is narrow, limited, and modest in scope." Kalitta Air LLC v. Central Texas Airborne Sys. Inc., 741 F.3d 955, 957–59 (9th Cir. 2013). The Supreme Court has emphasized that "taxable costs are limited by statute and are modest in scope." Taniguchi v. Kan Pac. Saipan, Ltd., 566 U.S. 560, 563 (2012).

"Taxable costs are limited to relatively minor, incidental expenses as is evident from § 1920, which lists such items as clerk fees, court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies, docket fees, and compensation of court-appointed experts. Indeed, "the assessment of costs most often is merely a clerical matter that can be done by the court clerk." Hairline Creations, Inc. v. Kefalas, 664 F.2d 652, 656 (C.A.7 1981). Taxable costs are a fraction of the

---

Counsel did not represent Mr. Anderson, it appears that he was either denied representation by the County (Cal. Gov. Code §§ 995.2, 996.4) or it was provided under a reservation of rights. Either way, the Court can only speculate whether he will be required to pay the cost bill. Similarly, the Court is unaware of whether Ms. Vazquez's counsel agreed in the fee agreement to pay the costs of litigation in the event she did not succeed. She does not state in her declaration that she will bear the burden of a cost award or, even, bear the costs incurred in the prosecution of her own case. Her declaration seems to belie any assertion that she will.

[5]The Court is aware that Anderson's Skelly hearing has not been completed, but the Kern County Probation Department seeks to fire him.

nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators. It comes as little surprise, therefore, that "costs almost always amount to less than the successful litigant's total expenses in connection with a lawsuit." 10 Wright & Miller § 2666, at 203." Taniguchi, at 573. Taniguchi continued, "Because taxable costs are limited by statute and are modest in scope, we see no compelling reason to stretch the ordinary meaning of the cost items Congress authorized in § 1920. Id. The facts and equities, and the plaintiff's indigent status require the same outcome here.

### A.   Plaintiff's Objections

#### 1.   Fee for service

The plaintiff objects that the amount sought related to service of subpoenas is excessive because they exceed that charged by the U.S. Marshal's service. The Court agrees and will reduce each service fee to $65 per service. (Local Rule 292 (f)(2)) This equates to service fees, including mileage fees, for the County of Kern for $65[6] and for Anderson to $365.51[7].

The Court will also grant witness fees that were actually paid to witnesses who actually submitted to deposition, though not those fees merely advanced by the process server. Thus, the County will be awarded $81.50[8] and Anderson will be granted $128[9].

#### 2.   Transcript Costs

Title 28 U.S.C. § 1920(2) in turn provides that a "judge or clerk of any court of the United States may tax as costs ... fees for printed or electronically recorded transcripts necessarily obtained for use in the case." Likewise, Local Rule 292(f)(3) provides that items taxable as costs include "Court reporter fees (28 U.S.C. 1920(2))." Thus, if found to be necessary to the litigation of a case, the costs of transcripts of depositions taken in a case may be taxed as costs under Rule 54 and § . See Aflex Corp. v. Underwriters Laboratories, Inc., 914 F.2d 175 (9th Cir. 1990).

---

[6] The Court declines to award investigator fees given the lack of showing that this effort could not have been conducted without an investigator and without justification why this witness was so crucial that the huge amount should have been spent in trying to locate her. In addition, review of the bill indicates that many of the sources used are internet based and, indeed, ultimately she was located merely by repeatedly checking Facebook.

[7] The Court declines to award costs for "attempted service" as to witnesses never deposed because there is no showing as the necessity of their testimony. In addition, the Court declines to award "attempted service" fees for witnesses who were deposed given the lack of showing related to how the bad addresses were discovered, why they were used, etc.

[8] For Yahil Morales and Deborah Cresswell.

[9] For Anallely Villegas and Andriena Rea.

The plaintiff objects that the defendants' attorneys should have shared copies of the deposition transcripts so that only one copy was needed. Though this argument would have merit if counsel were in the same office—or, even, in the same town—represented the same defendants or had no need to file motions, there is no showing how sharing transcripts could work given that the actual facts of this case. Thus, the Court does not find that it was unnecessary for both defense counsel to have copies of the transcripts or that buying separate copies was unreasonable. Therefore, the Court will award costs for the deposition transcripts to the County defendants in the amount of $9,253.80. It will award deposition transcript fees to Anderson in the amount of $14,163.39.

### a. Video and video synchronization

It declines to award costs related to video recording because these costs are not recoverable. In Kalitta Air LLC v. Central Texas Airborne Sys. Inc., 741 F.3d 955, 957–59 (9th Cir. 2013), the Court held that video synchronization, "while convenient, [it] was not an act of copying or exemplification and was not truly necessary for trial." (citing In re Williams Sec. Litig.–WCG Subclass, 558 F.3d 1144, 1147 (10th Cir. 2009) ["The 'necessarily obtained for use in the case' standard does not allow a prevailing party to recover costs for materials that 'merely added to the convenience of counsel' or the district court."]).

### 3. Copy charges

Though the plaintiff objects to an award of copying charges, Local Rule 292(f)(5) permits these costs if necessarily expended. The Court agrees that obtaining the Juvenile Court records were necessary in this case. Thus, the Court will award Anderson $21 in copy charges.

### 4. Attorney mileage

The Court declines to award the mileage sought by Anderson to reimburse his counsel. The Court finds that upon the facts and equities of this case, an award to cover mileage will not be granted.

**ORDER**

Based upon the foregoing, the Court **ORDERS**:

1. Costs for Anderson (Doc. 108) are taxed in the amount of $14,713.89 and added to his judgment;

2. Costs for the County/Appleton (Doc. 110) are taxed in the amount of $9,400.30 and

added to their judgment.

IT IS SO ORDERED.

    Dated: __**March 23, 2018**__                    **/s/ Jennifer L. Thurston**
                                                           UNITED STATES MAGISTRATE JUDGE